The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Eugene G. Doherty presiding. Good morning all. We are calling case number 4-24-1134, In Re Marriage of Lamb. Would counsel for the appellant please state your appearance. Mr. Vaughn, can you hear us? Yes, Your Honor. I apologize to you. Devon Vaughn on behalf of the appellant, Fab Lamb. And for the appellee? Good morning everybody. This is Attorney Bridget Buckley on behalf of the appellee, Rachel Lamb. All right. You may proceed, Mr. Vaughn. Thank you, Your Honor. Your Honor, to please the court and counsel. Obviously, this is an appeal from the Seventh Circuit in Greene County. We had a hearing last June on a modification of child support issue. The quick background of facts are there are two children born to these parties, Your Honors. The parties executed a separation agreement in October 2017 where the parties had 50-50 parenting time on a rotating 2-2-3 schedule. Child support at that time was not allocated based on the breakdown of the parties' parenting time. Since then, Your Honor, in that separation agreement, my client was to pay for all the medical expenses. They were going to break down the extracurricular expenses. Rachel, the petitioner, Your Honor, filed a motion to modify the child support award, which was zero, back in March of 2023. And we had a hearing last June, Your Honor. It's my client's position that at that hearing, there was no evidence presented to show that there had been a substantial change in circumstances warranting the modification of the child support. Again, the parties separated in October 2017. I think Judge Wright held it against my client that he did not produce any tax returns from 2017 or 2018. I think that's not how the case law holds it, Your Honor. I think it's the petitioner. Her obligation is to show that there had been an increase in the noncustodial parent's ability to pay, as well as an increase in the needs of the child since the previous court order. Again, that previous court order was back in October 2017. I don't think that there was any evidence to show that there had been an increased ability to pay since the October 2017 order, Your Honor. I believe that Judge Wright misconstrued the case law against my client, and also that there was simply not enough evidence presented by the petitioner to meet that prong of the standard, Your Honor. The second thing was that there had been an increase in the needs of the child or children since the previous court order. That simply was not met either, Your Honor. The court did review the transcripts. Judge Wright, at that hearing, even gave Ms. Buckley and her client a second bite of the apple to address that, Your Honor, as they did it in their initial direct examination. Long story short, Your Honor, it's our position that that simply was not met by the petitioner. Her burden was not met, and the modification for child support should have been denied. What about the cases that suggest that one can infer from the passage of time and the aging of the children that the children's needs have increased? Certainly is the case law, Your Honor. And again, that's just one prong of the burden for the petitioner, Your Honor. That is what the case law says. I'm not going to argue with the court that regard. I would just simply point out that there was no evidence presented for that. But still, the petitioner also needed to show that there had been a substantial change in circumstances or an increase in the noncustodial parent's ability to pay. That simply was not done, Your Honor. They had to prove both, and that was not done. In absolute terms, was it done in terms of showing what his income was at the time? Your Honor, we presented evidence that from 2019 to 2023, he worked in the construction business. Obviously, there's good years and bad years, ebbs and flows. But in 2019, Your Honor, the evidence was that he made $107,720. In 2023, he made $101,860. In those years, the mean was $102,936, Your Honor, those five years. Would it be appropriate to calculate that? Obviously, there's ebbs and flows. Sometimes, they're going to get the bid and get the job. Sometimes, they're not. Would you agree that the record doesn't give us a baseline for 2017? Absolutely, I would agree, Your Honor. My argument is that wasn't our burden to produce that. It was the burden of the petitioner to show that there had been an increase in the other party's ability to pay. That was not done. I think the court construed that against my client. I think that's a miscalculation as the case law suggests and says repeatedly that that's on the petitioner, the party bringing the action to show. All right, any other comment? Nothing further from our side, Your Honor. Simply state that, reiterate the fact that we do not believe that the burden was met in this case and ask the court to reverse and remand with directions the ruling that was entered back in August of last year. All right, thank you. Ms. Buckland. Thank you, Justices. A couple things to point out here. I appreciate the question about the case law. The case law specifically states as to the prong about whether or not there is an increase in the needs of the children and specifically in Ray Marriage of Adams 2004 ill app 3D as well as in Ray OJD 2017 ill app 2D. Those were cases that were used both by Mr. Vaughn as well as myself as well as Judge Wright. In both of those cases, it states whether or not that was pled in our motion, which in our original motion that was filed in 2023, we did state that there was an increase in the needs of the children. So we covered that basis at least in our motion. And then secondly, whether or not that was stated in the motion that just because there's been a passage of time that the courts can presume, meaning the trial courts can presume that because there's been a passage of time, that you can assume that the needs in the children have gone up. And Judge, you specifically asked that question. Are you arguing then that the passage of time is sufficient to obtain an increase in child support without any other evidence? No, absolutely not. I'm going to get to the income part after that. I just wanted to point out that I agreed with your questioning of Mr. Vaughn on that. And I absolutely agree that there needs to be another prom that is prune. I just wanted to make some comments as to that prom. As to that, I believe we met that burden. I believe we showed that burden. My client gave testimony that the client, meaning that she had to regularly take off of work, she was losing income herself, that she was not regularly reimbursed timely by the appellant, meaning that there were instances where she's not having enough income herself to support the children. So, I believe here this is showing that throughout the passage of time, the needs of the children are getting more substantial because she doesn't have these out-of-pocket costs anymore that would have gone into her pocket. So, in terms of the presumption that the needs of the children would grow over time, is that a poor fit when you have essentially an equal custodial arrangement that the children are in each household and neither parent has a child support obligation to begin with? In other words, if the costs are increasing for one parent, they're increasing for the other. I think that's a great philosophical question that you asked there, Judge. And I don't necessarily know that that's a question that is fair for me to answer because the courts have already answered it for us many times, which is that... Have they applied it in a case where there is equal parenting time and no prior support obligation? I honestly don't know the answer to that. And in this instance, though, as far as when we look at the ability of Mr. Vaughn and his ability to pay, I hear Mr. Vaughn keep saying, it was our burden to show the increase in the ability to pay. Well, if you look closely at my cross-examination and also what I wrote in my brief, and also what Judge Wright put specifically, was that I pressed hard with Mr. Vaughn to get him to explain to me what his income was. And the judge found that Mr. Lamb was not credible, that Mr. Lamb could not state specifically what his income was, and that the judge found that to be... His specific words were that Mr. Lamb was evasive when it came to pointing out what his income was. So that made it very difficult for us. I also pointed out that in 2024, and I don't believe this was something that Judge Wright took into his consideration, but in 2024, Mr. Lamb received a $16,000 deposit for solar panels. And that right there... Go ahead. So I think we know how those work, right? That's a reimbursement. That's not income. Sure, that's a reimbursement, but... So it's sort of a net zero. If you're getting reimbursed for the cost of something, that's not the same thing as income. Sure, and the way that I was looking at the solar panels was, when one obviously installs solar panels, you do that as a long-term investment, looking to obviously gain money from that on the back end, was my argument from that. Obviously, he's getting a reimbursement from it. But again, when you look back to the income, it was difficult to exactly... When you looked at his pay stubs and you looked at them over the years, we couldn't particularly make out how much his bonuses were, where exactly the bonuses were going in, where they were going out, when we looked at all of his bank statements. Don't we need to have his 2017 baseline to know if his income has gone up? So the way that the... I don't believe we need to know his 2017 baseline, because at the time the parties chose to waive discovery. And what Judge Wright found at that time was that he wasn't going to construe that against either of the parties. They entered into a marital separation agreement, which is a contractual agreement. Right, but how do we say something has gone up if we don't know the starting point? So the starting point for the judge was looking at the past few years that were produced. And over time, what he could tell was that the bonuses for the past few years that were produced at trial was that each year steadily, Mr. Lamb's income was going up. His reimbursements for gas each year were going up. His reimbursements for his cell phone were steadily going up. And that was his presumption to say, I believe that he obviously has an increase in his income and an increase in inability to pay. And I don't believe that that is obviously against the manifest way to disturb the court's original judgment. I guess I'm catching on your words that say the judge presumed his income went up. It's not the judge's burden to presume something. It's your burden to show something. Am I correct? So what I'm saying is if you look at the calculations that were written out in the actual order, the final order, it was shown each year from the beginning of the trial the exhibits that every single year, starting from, I believe it was 2018, that had been produced. Every year, the bonuses had gone up. The reimbursements had gone up. The income was going up. We can see that the income's going up, but that doesn't necessarily mean he wasn't making more in 2017. How do we know what that initial amount is? So I'm not sure what the initial amount was in 17 because during 2017, when the parties chose to waive discovery and entered into the marital separation agreement, that was when... So typically in a child support case, we don't go back and do discovery for the last seven years. That's not something that is typical. So I guess this is new to me if that's what the justices are presuming that we go back and do from the beginning, especially in a case where parties entered into a contractual agreement. That's not something that we would typically do. We would never go back if we're asking to modify child support, especially when it was set at zero and grab all the way back for the past seven, eight years to do discovery. We would look at the last four years. I mean, we'd look at the last three years. If you're trying to show, excuse me, if you were trying to show a change though, wouldn't you out of necessity have to show what the initial amount was to show that it changed? And part two, wouldn't you have the ability to, through discovery, to obtain the 2017 income? I mean, if that's what the practice is now that we're now supposed to be showing a change for the past seven, six, seven years, then I guess I've been practicing law incorrectly. Well, I think you're misconstruing. It isn't a question of saying you've got to do it for six or seven years. But if you're saying that there's been a change from year X, how do we know there's been a change from year X if we don't know what year X is? So that could be two years. You could be arguing that there was a substantial change in circumstances from two years ago. But if we don't know what the baseline is, how do we know whether it went up or down? So again, from the final written closing argument, and again, my client was under the presumption, she had, my client did not know when she entered into the agreement in 2017. She had no idea that Mr. Liam was getting reimbursements from his company. She had no idea that Mr. Liam was getting bonuses each year. She did not know when she chose to waive that discovery that his income was higher. But she didn't totally waive his discovery. She did do some discovery of his employer back before the original marital settlement agreement. And the record shows it was answered. She did limited discovery and it was not disclosed that he was getting, that he was getting large bonuses to the sum of $50,000 each year. She did not know that. Bonuses are income. How could they not be reflected in his W-2? They weren't reflected. It wasn't until a few years ago that she was informed by a member of his family that he was getting tens of thousands of dollars each year in reimbursements. And that was when she decided to file for child support. All right, anything further? Nothing further. All right, thank you. To you, Mr. Vaughn. Thank you, Your Honor. Your Honor, just a couple of points to the court. I think the court has kind of hit the nail on the head. The case law says you go back to the previous court order. The previous court order in this case was October 2017. So that is the start point. As far as the reimbursements, Your Honor, there was no contrary evidence presented at court by the opposing counsel that any of what he was receiving offset his personal expenses. None, zero. He testified that those were the mileage reimbursement as well as the cell phone was for work, Your Honor. There was no evidence to present to the contrary. And the bonuses are definitely reflective in the tax returns, Your Honor. He testified he's making about $1,300 a week. That comes out to about $69,000 a year, Your Honor. Those bonuses were in the W-2s, 100%, no question about it. And again, as far as what the parties did, as far as getting this legal separation agreement put together in 2017, to me, that's buyer's remorse to now come back years later and say that, oh, I didn't know, so I should be awarded for that. And another thing, Your Honor, I think the court addressed this as well. The price of milk for my client is the same as the price of milk for Ms. Buckley's client when it comes to their 223-5050 custody situation. That costs, there's no way to go around it. And again, I still didn't hear any argument from Ms. Buckley as far as the needs of the children to this date, Your Honor. So again, our position was that the petitioner's burden to show that there had been a substantial change in circumstances. As the court knows, that's showing both an increase in the other party's ability to pay as well as showing an increase in the needs of the children, Your Honor. Both prongs need to be met. That simply was not done at our hearing back in June of last year. All right, well, I thank both counsel for your arguments. We will stand and recess and issue a decision in due course.